**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| SALAHUDDIN F. SMART, | |
| Plaintiff, | Civil Action No. 13cv4690 (RMB) |
| v. | **OPINION** |
| TOWNSHIP OF WINSLOW, et al., | |
| Defendants. | |

**BUMB**, District Judge:

**I.   BACKGROUND**

When Plaintiff submitted this pro se civil rights action on August 5, 2013, he was a prisoner at Jones Farm in West Trenton, New Jersey. (Compl., ECF No. 1.) Plaintiff's application to proceed in forma pauperis ("IFP") was denied without prejudice after he was released from prison on October 3, 2013, because it was unclear whether Petitioner's ability to pay the filing fee had changed. (ECF No. 4.) Plaintiff submitted a new IFP application, but he then filed a Notice of Change of Address, indicating that he was again incarcerated. (ECF Nos. 8, 9.) The Honorable Robert B. Kugler denied Plaintiff's IFP application without prejudice because Plaintiff had not submitted his certified prison trust account statement with his IFP

1

application. (ECF No. 10.) Plaintiff has now submitted his certified prison trust account statement in support of his IFP application. (ECF No. 13). Subsequently, Plaintiff was released from prison. (ECF Nos. 14-17.)

Plaintiff has established his inability to pay the filing fee, and the Court will grant his IFP application. (ECF No. 13.) The Court must now review the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and dismiss the complaint if it is frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.

**II. THE COMPLAINT**

In his Statement of Claims, Plaintiff alleged the following:

> Defendant Walter Schilling on 8/1/13 expressed his desire to have Plaintiff open the front door of the house to record his information. Plaintiff did not consent therefore based on his race § 1981 claim defendant without a warrant walk on the side of property made a visual observation through a window invading my privacy. Observing no indications of a possible burglary in progress he contacted backup thereafter making a warrantless search of the home. The searches both separate of the property was not justified by exigent circumstances. Subsequently without a reasonable belief that warrantless entry in response to a generalized assertion of possible scene of burglary plaintiff was subjected to illegal investigative detention followed by a unlawful patdown frisk.

2

> Thereafter a fourth illegal search by breaking in rooms of the home and searching the computer used by plaintiff. There was also a unlawful seizure of (110) one hundred ten lawfully prescribed prescription pills. Than finally false arrest based on false charges without probable cause and malicious abuse of prosecution.

(Compl., ECF No. 1 at 9.)

As to the parties, Plaintiff alleged that on August 1, 2012, Patrolman Walter Schilling, Patrolman M. Clark, Sergeant C. Dobler and two "John Doe" officers of the Winslow Township Police Department conducted a series of unlawful warrantless searches leading to Plaintiff's arrest on false charges, and unlawful seizure of Plaintiff's property. (ECF No. 1 at 5, 7, 8.) Plaintiff also sued Robert Shimelski, in his official capacity as the Chief of Police at Winslow Township Police Department, alleging Shimelski failed to properly train and supervise police officers regarding searches and seizures. (Id. at 5.) Plaintiff claimed Shimelski personally directed the actions of his subordinates with respect to the unlawful searches, seizures and arrest on August 1, 2012. (Id. at 9.)

Plaintiff sued Assistant Camden County Prosecutor Raul Rivera, in his individual capacity, alleging a civil RICO claim under 18 U.S.C. § 1962. (Id. at 6.) Plaintiff also alleged constitutional claims against Rivera, in his official capacity, for unlawful seizure of Plaintiff's property on May 2, 2013, and

for malicious prosecution. (Id. at 9-10.) Plaintiff alleged Camden County Prosecutor Warren Faulk is liable in his supervisory capacity because he personally directed the unlawful seizure of Plaintiff's personal property. (Id.)

As to his civil RICO claim, Plaintiff alleged Faulk conspired with Rivera, at Plaintiff's March 22, 2013, and May 3, 2013 court hearings, to take Plaintiff's lawful property by extortion in the guise of a global plea deal, and this constituted racketeering activity in violation of RICO. (Id. at 6, 9-10.) Plaintiff alleged the Camden County Office of the Prosecutor is the enterprise used in the racketeering activity. (Id. at 6.)

Plaintiff also brought a § 1983 claim against the Camden County Office of the Prosecutor, alleging that the "Office knew" prosecutors would frequently involve themselves in illegal global plea deal practices; and "a final policymaker had knowledge or constructive knowledge of a policy or custom on unconstitutionally inadequate training or supervision of the Office of the Prosecutor." (ECF No. 1 at 3, 9.)

## III. DISCUSSION

### A. Standard of Review

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint

4

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint." Id. A court need not accept legal conclusions as true. Id. Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

  **B. Section 1981 Claim**

42 U.S.C. § 1981(a) provides:

  (a) Statement of equal rights

5

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and
> enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit
> of all laws and proceedings for the security
> of persons and property as is enjoyed by
> white citizens, and shall be subject to like
> punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and
> to no other.

"To state a claim under § 1981, a party must allege facts sufficient to show: '(1) [he] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute . . .'" Gross v. R.T. Reynolds, Inc., 487 F.App'x 711, 716 (3d Cir. 2012) (per curiam) (quoting Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001) (citation and internal quotation marks omitted in original)). A complaint that fails to state any facts in support of the conclusion that the wrongful acts by the defendants were motivated by discriminatory animus fails to state a plausible § 1981 claim. Id. at 716-17.

Plaintiff alleged only that Defendant Walter Schilling asked Plaintiff to open the front door of his home, and when he did not consent, based on Plaintiff's race, Schilling made a visual observation through a window, and then conducted a warrantless search of the home. Plaintiff has not alleged any

*facts* in support of his claim that Schilling's conduct was motivated by racial discrimination. Therefore, the Court will dismiss the § 1981 claim without prejudice.

### C. Section 1983 Claims

42 U.S.C. § 1983 "does not create substantive rights." Maher v. Gagne, 448 U.S. 122, 129 n. 11 (1980). It provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

"[T]o state a prima facie case under § 1983, a plaintiff must demonstrate that: (1) the alleged wrongful conduct was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). A plaintiff, therefore, must establish violation of an underlying constitutional or statutory right. Id. The first step in analyzing such a claim is to "identify the exact contours of the underlying right said to have been violated." County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998).

7

### 1. Unlawful Search and Seizure

Plaintiff alleged Patrolman Walter Schilling, Patrolman M. Clark, Sergeant C. Dobler, John Doe (female officer), and John Doe (Lieutenant) entered the home where Plaintiff was staying without a warrant, and conducted an unlawful warrantless search of Plaintiff's room and his computer. Warrantless searches of a home are presumptively unreasonable under the Fourth Amendment. Groh v. Ramirez, 540 U.S. 551, 559 (2004) (quoting Payton v. New York, 445 U.S. 573, 587-88 (1980)). Plaintiff further alleged the officers did not observe anything suspicious for burglary to justify warrantless entry. The Court will proceed the unlawful search and seizure claims against Defendants Schilling, Clark, Dobler and Does, in their individual capacities.[1] See Broadwater v. Fow, 945 F.Supp.2d 574, 585 (M.D. Pa. 2013) (proceeding § 1983 unlawful search claim based on allegation of warrantless entry into home).

Plaintiff further alleged that Robert Shimelski, the Chief of Police of Winslow Township Police Department, as a supervisor, personally directed the warrantless entry by the

---

[1] Plaintiff also sued these Defendants in their official capacities. Claims against municipal employees in their official capacities are tantamount to claims against the entity, and should be addressed as Monell claims against the entity. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit under Section 1983 against a municipal officer in his or her official capacity is, in actuality, a suit against the municipality that the officer represents). The official capacity claims against these police officers will be dismissed with prejudice.

subordinate officers. Plaintiff sued Shimelski in his official capacity. "Because a claim against a municipal official in an official capacity is tantamount to a claim against the entity, it is not necessary to bring official capacity actions against local governmental officials." Marshal v. Borough of Ambridge, 798 F.Supp. 1187, 1198 (W.D. Pa. 1992) (citing Schwartz & Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees, vol. 1, p. 320)). Plaintiff has not pled that Shimelski was acting under a municipal policy or custom when he directed the subordinate officers to make a warrantless search of the home where Plaintiff was staying; therefore, he has not pled a viable Monell claim related to Shimelski's actions. See Connick v. Thompson, 563 U.S. 511, 131 S.Ct. 1350, 1359 (2011) (under § 1983 local governments are responsible only for their own illegal acts, they are not vicariously liable for their employees' actions). Robert Shimelski, in his official capacity, will be dismissed as a party in this matter.[2]

### 2. False Arrest

To state a false arrest claim in violation of the Fourth Amendment, a plaintiff must plead that the arresting officers lacked probable cause to arrest. Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005). Plaintiff never asserted what he was arrested for or how the charges are false. Plaintiff's

---

[2] Plaintiff did not sue Shimelski in his individual capacity.

conclusory allegations are insufficient to state a claim for false arrest. See Basile v. Township of Smith, 752 F.Supp.2d 643, 657-58 (W.D. Pa. 2010) (dismissing claim where allegations that officers lacked probable cause to arrest and that they falsified affidavit of probable cause were threadbare and conclusory). The Court will dismiss Plaintiff's false arrest claims without prejudice.

### 3. Monell[3] Claims

In support of his claim of municipal liability against the Township of Winslow, Plaintiff alleged:

> [F]ailure to train or supervise police officer(s) (1) contemporaneous knowledge and (2) subjective recklessness which is deliberate indifference to the rights of persons with whom these employees will come into contact. The circumstances in this case approximate the predictably recurring scenarios discussed in [illegible] case law. The [Township] knew of moral certainty that police would frequently enter homes without a warrant . . . The outcome of the encounter between plaintiff and officers were highly predictable likely to recur. The [Township] failed to arms its officers with training to allow them to accomplish the task of exigent circumstances justification for warrantless entr[ies]. There is failure to train claim based on substantially similar incidents to the warrantless entry here that could have put the supervisory authorities on notice that specific training was necessary to avoid 8/1/2012 constitutional violation.

---

[3] See Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978) ("it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.")

10

> There are patterns of substantially similar constitutional violations as opposed to merely similar violations. The final policy maker had knowledge or constructive knowledge of a policy or custom of unconstitutionally inadequate training or supervision of [illegible] Township police officers.

(Compl., ECF No. 1 at 2-3.)

"A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). For liability, the municipal policy or custom must be "the 'moving force' behind the constitutional tort of one of its employees.'" Id. (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981)). If the policy or custom relates to a failure to train municipal employees, the plaintiff must show that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Id. (quoting Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (quoting City of Canton, Ohio v. Harris ("Canton"), 489 U.S. 378, 388 (1989)). Furthermore, "'the deficiency in training [must have] actually caused' the

11

constitutional violation." Id. (quoting Canton, 489 U.S. at 391)).

To show deliberate indifference, a plaintiff must prove "'that a municipal actor disregarded a known or obvious consequence of his action.'" Id. at 223 (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown ("Bryan Cnty"), 520 U.S. 397, 410 (1997)). "Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'" Id. (quoting Connick, 131 S.Ct. at 1360). "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and '[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.'" Id. (quoting Bryan Cnty., 520 U.S. at 407.))

Deliberate indifference may also be established in certain situations where the need for training is "'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights, even without a pattern of constitutional violations." Id. (quoting Canton, 489 U.S. at 390 n. 10.)) This is referred to as "single-incident" liability, and it is based on "'[t]he likelihood that the situation will

12

recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." Id. (quoting Bryan Cnty., 520 U.S. at 409)).

First, Plaintiff has not alleged any facts pointing to prior instances of unjustified warrantless entry into a person's home that would support a claim of deliberate indifference. See Gaymon v. Esposito, Civ. Action No. 11-4170 (JLL), 2013 WL 4446973, at *15 (D.N.J. Aug. 16, 2013) (dismissing claim for failure to allege prior instances of use of deadly force). Plaintiff's allegations of prior instances are purely conclusory and unsupported.

Second, regarding single-incident claims of deliberate indifference, the Court assumes that there is a need for police training regarding exigent circumstances for warrantless entry into a home, but there are no facts in the Complaint alleging the Township of Winslow does not train police officers on exigent circumstances. Alternatively, there are no allegations that the Township of Winslow's specific training program is deficient. See Gaymon, 2013 WL 4446973, at *13 (dismissing Monell claim based on lack of factual allegations in complaint concerning the nature of a municipality's training program for police officers); Benhaim v. Borough of Highland Park, Civ. No. 11-cv-2502 (KM), 2015 WL 105794, at *7 (D.N.J. Jan. 6, 2015) (liability does not "arise on the tautological grounds that the

13

injury in question would not have occurred if officers had been trained to avoid that particular injury; such a claim 'could be made about almost any encounter resulting in injury.'" (quoting Canton, 489 U.S. at 391)). Therefore, the Court will dismiss Plaintiff's Monell claim against the Township of Winslow without prejudice.

Plaintiff also alleged failure to train by the Camden County Office of the Prosecutor. This claim fails because Plaintiff's allegation is wholly conclusory. Plaintiff alleged the "Office knew" prosecutors would frequently employ the global plea deal; and "a final policymaker had knowledge or constructive knowledge of a policy or custom of unconstitutionally inadequate training or supervision by the Office of the Prosecutor." (Compl., ECF No. 1 at 9.) Plaintiff did not provide any supporting facts describing his global plea deal, or how it violated a constitutional right to offer a compromise in exchange for dropping criminal charges. Therefore, this claim will be dismissed without prejudice.

### 4. Malicious Prosecution

"To prove malicious prosecution under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4)

14

the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)). "The second element of a malicious prosecution claim, favorable termination of the criminal proceeding, is established when the plaintiff is 'innocent of [the] crime charged in the underlying prosecution.'" Pittman v. Metuchen Police Dept., Civil Action No. 08-2373 (GEB), 2010 WL 4025692, at * 7 (D.N.J. Oct. 13, 2010) (quoting Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000)). "If the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong necessary to maintain a malicious prosecution claim under § 1983." Id. (citing Marable v. West Pottsgrove Twp., No. Civ.A.03-CV-3738, 2005 WL 1625055, at *8 (E.D. Pa. July 8, 2005) (additional citations omitted).

It appears from the Complaint that Plaintiff agreed to civil forfeiture of his property in order to have the criminal charges against him dismissed. Dismissal of charges as part of a compromise with the accused is not a favorable termination of a criminal proceeding for purposes of a malicious prosecution claim. Therefore, the Court will dismiss the malicious

prosecution claim without prejudice, allowing Plaintiff to amend the complaint only if he can plead facts supporting favorable termination of the criminal charges.

### 5. Unlawful Seizure of Property by Prosecutors

In analyzing a § 1983 claim against a prosecutor, a Court must determine whether the prosecutor is entitled to absolute immunity for the conduct alleged. See Imbler v. Pachtman, 424 U.S. 409, 424 (1976) ("the same considerations of public policy that underlie the common-law rule likewise countenance absolute [prosecutorial] immunity under s[ection] 1983.") A prosecutor's conduct in initiating a civil forfeiture action is entitled to absolute prosecutorial immunity. Schrob v. Catterson, ("Schrob I") 948 F.2d 1402, 1412 (3d Cir. 1991); but see Giuffre v. Bissell, 31 F.3d 1241, 1253 (3d Cir. 1994) (distinguishing Schrob I because prosecutor's conduct of advising the Chief of Police how to handle a challenged forfeiture proceeding was not in writing or subject to judicial oversight with attendant safeguards). Negotiating a plea deal is also protected by absolute prosecutorial immunity. See Stankowski v. Farley, 487 F.Supp.2d 543, 552 (M.D. Pa. 2007) (negotiating a plea bargain is conduct "intimately associated with the judicial phase of the criminal process" (quoting Imbler, 424 U.S. at 430); Cady v. Arenac County, 574 F.3d 334, 341 (6th Cir. 2009) ("[c]onduct associated with plea bargains has long been held by this court

16

to be so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity" (internal quotations omitted)); Doe v. Phillips, 81 F.3d 1204, 1210 (2d Cir. 1996) ("[T]he negotiation of a plea bargain is an act within a prosecutor's jurisdiction as a judicial officer."); Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1492 (10th Cir. 1991) (absolute immunity attaches to plea bargaining activity "due to its intimate association with the judicial process.")

Rivera and Faulk are entitled to absolute prosecutorial immunity for the conduct of bringing a civil forfeiture action and negotiating a plea deal. Thus, the Court will dismiss, with prejudice, Plaintiff's unlawful seizure claims against Rivera and Faulk.

**D.   Civil Rico Conspiracy**

County Prosecutor Offices, as municipal entities, are immune from civil RICO claims. Kadonsky v. New Jersey, 188 F.App'x 81, 84-85 (3d Cir. 2006) (per curiam) (citing Genty v. Resolution Trust Corp., 937 F.2d 899, 914 (3d Cir. 1991)). Plaintiff's RICO claim against the Camden County Prosecutor's Office will be dismissed with prejudice.

"[T]o plead a civil RICO claim under 18 U.S.C. § 1962(c) [conspiracy], [a plaintiff] must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

17

District 1199P Health and Welfare Plan v. Janssen L.P., 784 F.Supp.2d 508, 518-19 (D.N.J. 2011) (citing Sedima v. Imrex Co., 473 U.S. 479, 482–83 (1985)). "A RICO enterprise is 'an entity [made up of] a group of persons associated together for the common purpose of engaging in a course of conduct.'" Id. at 526 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). "To establish the existence of an enterprise, a plaintiff must prove that (1) the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) the members of the enterprise function as a continuing unit with established duties; and (3) the enterprise must be separate and apart from the pattern of activity in which it engages." Id. (citing Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 789–90 (3d Cir. 1984)). Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement. Hecht v. Commerce Clearing House Inc., 897 F.2d 21, 25 (2nd Cir. 1990); See Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989) (plaintiff must plead agreement to commit predicate acts and knowledge that those acts were part of a pattern of racketeering activity in violation of section 1962(a)-(c)).

Here, Plaintiff did not plead any plausible *facts* stating that the prosecutors agreed to commit extortion as part of a

18

continuing scheme to unlawfully seize personal property. The civil RICO claims against Rivera and Faulk will be dismissed without prejudice.

**IV.   CONCLUSION**

Plaintiff's IFP application will be granted. In the accompanying Order filed herewith the Court will: (1) dismiss the § 1981 claim against Defendant Schilling without prejudice; (2) proceed the unlawful search claims against Defendants Schilling, Clark, Dobler, and Does in their individual capacities; (3) dismiss the false arrest claims without prejudice; (4) dismiss the Monell claims without prejudice; (5) dismiss the malicious prosecution claim(s) without prejudice; (6) dismiss with prejudice the unlawful seizure claims against Rivera and Faulk; (7) dismiss with prejudice the civil RICO claim against the Camden County Prosecutor's Office; and (8) dismiss without prejudice the civil RICO claims against Rivera and Faulk.

                              s/Renée Marie Bumb
                              **RENÉE MARIE BUMB**
                              UNITED STATES DISTRICT JUDGE

Dated: September 16, 2015